# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL D. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-367-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Michael D. Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---
[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 25, 1977, and was thirty-six years old at the time of the administrative hearing (Tr. 156). He attended some college, and has worked as a stock clerk, sales attendant, and dispatcher (Tr. 50, 78). The claimant alleges that he has been unable to work since December 14, 2008, due to a back injury and carpal tunnel syndrome (Tr. 213).

## Procedural History

On January 7, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 156-57). His application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 8, 2014 (Tr. 21-37). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with frequent balancing, stooping, crouching, handling, fingering, and feeling; occasional kneeling, climbing ramps and stairs, and using hand controls; and no crawling, overhead reaching, and climbing ropes, ladders or scaffolds (Tr. 28). The ALJ further found the claimant must avoid exposure to

unprotected heights, moving mechanical parts, and temperature extremes (Tr. 28). Additionally, the ALJ found the claimant required a sit/stand option allowing a change in position at least every thirty minutes (Tr. 28). Due to psychologically based factors, the ALJ found the claimant could perform simple tasks; make simple work-related decisions; and have no more than occasional interaction with supervisors, co-workers, and the public (Tr. 28). The ALJ found that the claimant's time off task would be accommodated by normal breaks (Tr. 28). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national economy, *e. g.*, small product assembler and production assembler (Tr. 35-36).

## Review

The claimant contends that the ALJ erred by failing to properly account for his carpal tunnel syndrome in the RFC. The Court finds the claimant's contention unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of bilateral carpal tunnel syndrome, lumbar disc disease, thoracic spine fracture with disc disease, left shoulder strain/sprain, mood disorder, and anxiety disorder (Tr. 22). The relevant medical records reveal that prior to November 2011, the claimant's treatment largely consisted of emergent care for back pain (December 2008) and neck/shoulder pain (February 2010 and June 2010) (Tr. 272-76, 291-98, 340-42). On November 16, 2011, the claimant established care with Dr. Alexander Lee and reported back pain that began twenty years earlier and was exacerbated by a fall in December 2008 (Tr. 332-33). On

physical examination, Dr. Lee found limited flexion and extension in the claimant's thoracic spine due to pain, spasm, and kyphosis (Tr. 333). As to the claimant's hands, Dr. Lee found no clubbing, cyanosis, or edema, and no motor or sensory deficits (Tr. 333). He assessed the claimant with, *inter alia*, thoracic root lesion and backache, and prescribed medication (Tr. 333).

At Dr. Lee's request, Dr. Yu Zhu performed an electromyogram/nerve conduction study on December 9, 2011, the results of which revealed bilateral carpal tunnel syndrome (Tr. 306-07). The claimant reported significant improvement in his carpal tunnel symptoms to Dr. Zhu prior to testing, and indicated only that he had some numbness and tingling in his middle fingers bilaterally (Tr. 306). Dr. Zhu recommended wearing wrist splints at night (Tr. 307). Dr. Zhu also recommended an MRI of the claimant's thoracic spine to rule out any spinal cord lesion (Tr. 307). An MRI scan of the claimant's thoracic spine conducted December 20, 2011, revealed no evidence of spinal cord abnormality or intradural abnormality; an old, mild anterior compression of the T10 vertebral body; mild degenerative changes of the thoracic spine; small posterior central disc protrusion of the T7-8; and no evidence of spinal stenosis or foraminal stenosis (Tr. 304).

On December 23, 2011, Dr. Lee completed a form for the Washington State Department of Social and Health Services wherein he opined that the claimant could not stand, walk, sit, lift, carry, focus, comprehend, type, write, or compose himself for job interviews due to depression, anxiety, back pain, carpal tunnel syndrome, and a T10 compression fracture (Tr. 308). Dr. Lee further opined that the claimant could lift up to

five pounds frequently with occasional carrying of up to ten pounds maximum, and indicated his treatment plan consisted of pain management (Tr. 308-09).

Dr. Gary Gaffield performed a consultative physical examination of the claimant on November 9, 2010 (Tr. 299-303). Dr. Gaffield noted the claimant had restricted motion in his lumbar spine due to pain, slight restricted cervical motion, and crepitus in his sacral iliac areas bilaterally, but no tenderness, trigger points, or spasms (Tr. 301). As to the claimant's hands, Dr. Gaffield found no gross deformities, adequate strength, full range of motion, and intact dexterity and grip (Tr. 301-02). Dr. Gaffield opined that in an eight-hour workday, the claimant could walk/stand between two and six hours at one time without interruption, for a total of six to eight hours; and sit between two and six hours at one time without interruption, for a total of six to eight hours (Tr. 302). Additionally, Dr. Gaffield indicated the claimant could lift/carry fifty pounds occasionally and twenty-five pounds frequently, occasionally perform postural activities, and would be advised to avoid heights and heavy equipment (Tr. 303).

At the administrative hearing, the claimant testified that he was stabbed in his upper back when he was younger, and that a recent fall in a parking lot exacerbated his back injury (Tr. 50-53). He further testified that the primary reason he could not work was the pain in his back since falling (Tr. 60). The claimant rated his daily pain without medication at four or five on a ten-point scale (Tr. 63). As to his hands, the claimant stated that he changed careers twice due to pain, numbness, and an inability to grasp and hold things, and only recently found out that he had carpal tunnel syndrome (Tr. 67). He stated that his carpal tunnel syndrome does not prevent him from working so long as he is

not required to constantly grip (Tr. 67).  As to specific limitations, the claimant stated he could sit for two hours before needing to lie down for an hour or two, stand for fifteen to thirty minutes, lift and carry ten pounds, and walk one-half of a mile (Tr. 69-71).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical record.  He gave little weight to Dr. Lee's opinions because:  (i) diagnostic imaging showed no herniation or stenosis; (ii) his statement was internally inconsistent and was inconsistent with the claimant's testimony; and (iii) he completed the MSS after treating the claimant only twice (Tr. 32-33).  The ALJ gave Dr. Gaffield's opinion great weight, finding it was fully supported by and consistent with the medical evidence of record as a whole, however, he indicated that he reduced the RFC to light work and added limitations based on the claimant's subjective complaints (Tr. 33).

The claimant contends that the ALJ failed to account for his carpal tunnel syndrome when forming the RFC, specifically that he failed to provide a narrative discussion with regard to his RFC limitations.  The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis.  The ALJ noted and discussed all of the findings of the claimant's various treating, consultative, and reviewing physicians, adopted any diagnoses and limitations related to his hands found by his medical sources, added more restrictive limitations of his own, and still concluded the claimant could work.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before

[he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quotin-g* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. Thus, the ALJ did not err in considering the evidence related to the claimant's carpal tunnel syndrome.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 27th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**